IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TELLY ROYSTER, | : | |
| | : | |
| Petitioner, | : | CIVIL ACTION NO. 19-2126 |
| | : | |
| v. | : | |
| | : | |
| LAWRENCE MAHALLY; THE | : | |
| DISTRICT ATTORNEY OF THE | : | |
| COUNTY OF PHILA.; and THE | : | |
| ATTORNEY GENERAL OF THE STATE | : | |
| OF PENNSYLVANIA, | : | |
| | : | |
| Respondents. | : | |

**MEMORANDUM OPINION**

Smith, J.                                                                                     December 14, 2022

The Antiterrorism and Effective Death Penalty Act provides for a one-year statute of limitations for the filing of habeas petitions. Generally, this limitations period runs from the date the habeas petitioner's judgment of sentence becomes final; however, AEDPA provides for an alternative accrual date: the date on which the petitioner could have discovered the factual predicate of the claim by exercising due diligence. The petitioner in this case, who is currently serving a life sentence after a first-degree murder conviction, has filed a habeas petition under 28 U.S.C. § 2254 in which he argues that the court should apply this alternative start date in part because he appears to recognize that his judgment of sentence became final more than a decade ago. He contends that he only learned of the factual predicate for his claim – that his trial counsel had an undiagnosed mental health issue – in late 2014, and he claims that this discovery supports his ineffective assistance of counsel claims he asserts in this habeas petition.

This matter was referred to a United States magistrate judge, who has issued a report and recommendation in which he recommends that the court deny the habeas petition because the

petitioner failed to file it within the one-year statute of limitations. As part of this determination, the magistrate judge concluded that the petitioner was not entitled to the alternative accrual date because, even if the petitioner learning about his trial counsel's mental health issues was new, the factual predicates for his ineffective assistance of counsel claims were actually available to him years prior to his filing of the habeas petition. The magistrate judge also concluded that the timeliness of the instant petition could not be saved by statutory tolling, equitable tolling, or the miscarriage of justice exception.

Currently before the court are the petitioner's objections to the report and recommendation in which he argues that, *inter alia*, he is entitled to the alternative start date. As discussed below, the court will overrule the objections, adopt the report and recommendation, and deny the habeas petition in large part because the court agrees with the magistrate judge that the factual predicates for the ineffective assistance of counsel claims were known to the petitioner many years before he filed the instant petition.

## I.   BACKGROUND AND PROCEDURAL HISTORY

On June 7, 1999, the *pro se* petitioner, Telly Royster ("Royster"), "shot two men as they sat in the stairwell of their apartment building. One of the victims died, and the other survived a gunshot wound to his abdomen." *Commonwealth v. Royster*, No. 1906 EDA 2016, 2017 WL 4150580, at *1 (Pa. Super. Sept. 19, 2017). For these acts, a jury sitting in the Court of Common Pleas of Philadelphia County convicted Royster of first-degree murder (18 Pa. C.S. § 2502), attempted murder (18 Pa. C.S. §§ 901, 2502), possessing an instrument of crime (18 Pa. C.S. § 907), and carrying a firearm on a public street or public property in Philadelphia (18 Pa. C.S. § 6108) on October 27, 2000. *See id.* (listing convictions); Docket, *Commonwealth v. Royster*, No. CP-51-CR-903181-1999 (Philadelphia   Cnty.   Ct.   Com.   Pl.),   *available   at*:

https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-51-CR-0903181-1999&dnh=usMOVzMWKfw6lgGzZEC%2BiA%3D%3D ("CCP Docket"). The Commonwealth had been seeking the death penalty, so the case then proceeded to the penalty phase. The jury declined to impose the death penalty so, on October 30, 2000, the trial court sentenced Royster to a mandatory term of life imprisonment on the first-degree murder conviction and consecutive terms of incarceration on his other offenses. *See Royster*, 2017 WL 4150580, at *1 (identifying sentence); CCP Docket (same); Pet. Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Pet.") at ECF p. 19, Doc. No. 2 (indicating that Commonwealth was seeking death penalty and that jury did not impose death sentence).

Although Royster filed a direct appeal from his convictions and sentences to the Pennsylvania Superior Court, it affirmed his judgment of sentence via an unpublished decision on May 5, 2003. *Royster*, 2017 WL 4150580, at *1. Royster never sought further review by the Pennsylvania Supreme Court. *See id.*

Royster filed his first petition under Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S. § 9541–46 ("PCRA"), on September 5, 2003. *See id.* Although the PCRA court appointed counsel to represent Royster and appointed counsel filed an amended PCRA raising six claims of ineffective assistance of trial counsel, the PCRA court dismissed the amended petition without a hearing under Rule 907 of the Pennsylvania Rules of Criminal Procedure on February 7, 2005.[1]

---

[1] Rule 907 provides in relevant part that

Except as provided in Rule 909 for death penalty cases,

(1) the judge shall promptly review the petition, any answer by the attorney for the Commonwealth, and other matters of record relating to the defendant's claim(s). If the judge is satisfied from this review that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, the judge shall give notice to the parties of the intention to dismiss the petition and shall state in the notice the reasons for the dismissal. The defendant may respond to the proposed

*See id.* Royster appealed from this decision to the Superior Court, which affirmed the dismissal via an unpublished decision on March 7, 2006.[2] *See id.* Royster did not seek further review by the Pennsylvania Supreme Court. *See id.*

Royster filed a second PCRA petition on January 23, 2015. *See id.* Although Royster acknowledged that the petition was untimely, he asserted that the after-discovered evidence exception in 42 Pa. C.S. § 9545(b)(1)(ii) applied. *See id.*; *see also* 42 Pa. C.S. § 9545(b)(1)("Any [PCRA] petition . . ., including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that: . . . (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence."). Royster also asserted that the after-discovered evidence consisted of an article in *The Legal Intelligencer* dated December 15, 2014, which described his trial counsel's "struggle with mental illness" and his suspension from practicing law. *See Royster*, 2017 WL 4150580, at *1. Royster argued that trial counsel's mental illness resulted in his "failure to investigate and raise a diminished capacity defense at [Royster's] trial." *Id.*

The PCRA court appointed counsel to represent Royster, and appointed counsel filed two *Turner*/*Finley* no-merit letters.[3] *See id.* After providing notice of its intent to dismiss under Rule

---

dismissal within 20 days of the date of the notice. The judge thereafter shall order the petition dismissed, grant leave to file an amended petition, or direct that the proceedings continue.

Pa. R. Crim. P. 907(1).

[2] While the case was on appeal, the Superior Court remanded the matter to the PCRA court to determine whether PCRA counsel had abandoned Royster insofar as counsel had not filed a brief on Royster's behalf. *See* Docket, *Commonwealth v. Royster*, No. 948 EDA 2005 (Pa. Super). While on remand, the PCRA court determined that counsel had not intended to abandon Royster, and set a deadline for counsel to file an appellate brief. *See id.* Thereafter, Royster's counsel timely filed the brief with the Superior Court. *See id.*

[3] *See Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988); *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (en banc). *Turner*/*Finley* requires

an "[i]ndependent review of the record by competent counsel[,]" which "requires proof of:"

"1) 'A no-merit' letter by PC[R]A counsel detailing the nature and extent of his review;
2) The 'no-merit' letter by PC[R]A counsel listing each issue the petitioner wished to have reviewed;

907, the PCRA court entered an order on May 13, 2016, allowing counsel to withdraw, and an order on May 20, 2016, dismissing the second PCRA petition for being untimely. *See id.*

On June 6, 2016, Royster timely appealed from the dismissal of his second PCRA petition to the Superior Court. *See id.* On appeal, Royster claimed that the PCRA court erred when it (1) "in a [R]ule 907 intent to dismiss ruled [his] PCRA untimely without having a hearing on timeliness when the petition clearly states it invokes the exception and is being filed within 60 days of the newly discovered evidence, and (2) "permitted [counsel] to withdraw without taking any actions on behalf of petitioner or his issues which have merit and were filed timely." *Id.* at *2.

In addressing Royster's claims on appeal, the Superior Court described the claims as follows:

> [Royster] claims the "new fact" of trial counsel's diagnosis with Attention Deficit Hyperactivity Disorder (ADHD) in 2011 was unavailable to him until he discovered the article in *The Legal Intelligencer* in December of 2014. [Royster] asserts that counsel's "undiagnosed list of psychiatric disorders that caused or rather impacted his lack of competent representation pre-trial and during trial" entitles him to relief and, thus, the PCRA court erred in permitting PCRA counsel to withdraw "without having performed any duties on behalf of [Royster]." [Royster] avers that because he filed the instant PCRA petition within sixty days of the date of the article, it was timely filed under an exception to the PCRA time-bar.

*Id.* at *3 (internal citations omitted).

---

3) The PC[R]A counsel's 'explanation', in the 'no-merit' letter, of why the petitioner's issues were meritless;
4) The PC[R]A court conducting its own independent review of the record; and
5) The PC[R]A court agreeing with counsel that the petition was meritless."

*Jenkins v. Superintendent of Laurel Highlands*, 705 F.3d 80, 90 n.17 (3d Cir. 2013) (quoting *Commonwealth v. Widgins*, 29 A.3d 816, 817–18 (Pa. Super. 2011)).
    In addition,

> PCRA counsel seeking to withdraw [must] contemporaneously forward to the petitioner a copy of the application to withdraw that includes (i) a copy of both the "no-merit" letter, and (ii) a statement advising the PCRA petitioner that, in the event the trial court grants the application of counsel to withdraw, the petitioner has the right to proceed pro se, or with the assistance of privately retained counsel.

*Widgins*, 29 A.3d at 818 (citation omitted).

After considering these claims, the Superior Court determined that the PCRA court did not err in dismissing Royster's second PCRA petition without a hearing because it did not qualify for section 9545(b)(1)(ii) exception to the one-year filing requirement and was therefore untimely filed. In reaching this decision, the Superior Court explained that

> [a]ssuming, *arguendo*, [Royster] filed the instant petition within sixty days of the article's publication, [Royster]'s bald claims that counsel's medical diagnosis affected his representation of [Royster] in 2000 do not entitle him to relief. . . .
>
> [T]he basis of [Royster's] claim is the alleged fact that trial counsel had been ineffective in failing to investigate or present a diminished capacity defense at trial; however, this allegation is not dependent upon any subsequent medical diagnosis affecting trial counsel about which [Royster] may have read in 2014, as [Royster] clearly would have been aware that counsel did not present a diminished capacity defense at trial in 2000. [Royster] had the opportunity to present this claim in his first PCRA petition along with the other allegations of trial counsel's ineffectiveness that he raised, but he failed to do so. As stated previously, a panel of this Court thoroughly considered the numerous allegations of trial counsel's ineffectiveness that [Royster] raised in his first PCRA petition and found each to be meritless. Thus, "[Royster's] attempt to interweave concepts of ineffective assistance of counsel and after-discovered evidence as a means of establishing jurisdiction is unconvincing."

*Royster*, 2017 WL 4150580, at *3 (quoting *Commonwealth v. Gamboa–Taylor*, 753 A.2d 780, 785 (Pa. 2000). The Superior Court also determined that the PCRA court did not err in permitting appointed counsel to withdraw because PCRA petitioners do not have an automatic right to appointed counsel in prosecuting a second PCRA petition. *See id.* at *4 (citing Pa. R. Crim. P. 904(b)).

Following the Superior Court's affirmance, Royster filed a motion for reargument with the Superior Court, and the Superior Court denied the motion on November 22, 2017. *See* Docket, *Commonwealth v. Royster*, No. 1906 EDA 2016 (Pa. Super.), *available at*: https://ujsportal.pacourts.us/Report/PacDocketSheet?docketNumber=1906%20EDA%202016&d nh=VAHrC8V56MY4DqdVKUcLsQ%3D%3D ("Pa. Super. Docket"). Royster then filed a

6

petition for allowance of appeal with the Pennsylvania Supreme Court, which the Court denied on July 10, 2018. *See Commonwealth v. Royster*, 189 A.3d 381 (Pa. 2018) (Table); Docket, *Commonwealth v. Royster*, No. 53 EAL 2018 (Pa.), *available at*: https://ujsportal.pacourts.us/Report/PacDocketSheet?docketNumber=53%20EAL%202018&dnh =7zJG4oNfOeCR17KP0aILFw%3D%3D.

Royster filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254 on May 8, 2019.[4] *See* Pet. at ECF p. 18 (indicating that Royster provided the petition to prison officials for mailing on May 8, 2019); *Houston v. Lack*, 487 U.S. 266, 275–76 (1987) (holding that *pro se* prisoner's petition is deemed filed "at the time the [prisoner] delivered it to the prison authorities for forwarding to the court clerk"). In the petition, Royster includes a number of claims of ineffective assistance of counsel relating to his trial counsel. For instance, Royster claims to have had limited contact with his trial counsel prior to trial. *See* Pet. at ECF p. 19. Royster notes that he sent trial counsel letters "inform[ing] him of [his] suicide attempts and commitment to mental health institutions/hospitals due to [his] history of mental illness and [his] drug use, and abusive childhood." *Id.* Despite these letters, trial counsel did not make additional attempts to contact Royster or investigate the content of the letters. *See id.*

Royster asserts that his trial counsel was deficient in additional respects prior to and during the criminal trial. *See id.* at ECF pp. 19, 21, 22. First, Royster claims that his trial counsel was unprepared and disorganized. *See id.* at ECF pp. 19, 22. Second, Royster alleges that trial counsel did not make an opening statement to the jury. *See id.* at ECF p. 19. Third, Royster contends that

---

[4] Along with the petition, Royster had applied for leave to proceed *in forma pauperis*. *See* Doc. No. 1. On May 24, 2019, the Honorable C. Darnell Jones, II, who was previously assigned to this matter, entered an order which pointed out that Royster had failed to provide the court with a copy of his prisoner trust fund account statement as required by 28 U.S.C. § 1915(a)(2). *See* Doc. No. 4. Judge Jones directed Royster to submit this statement within 30 days of the date of the order. *See id.* Royster complied with this directive and filed his account statement on June 20, 2019. *See* Doc. No. 6. On May 11, 2020, Judge Jones granted Royster leave to proceed *in forma pauperis*.

trial counsel failed to adequately investigate the facts of the case, including his mental health history and abusive childhood. *See id.* Fourth, Royster asserts that trial counsel failed to visit or consult with him enough. *See id.* at ECF pp. 19, 21. Fifth, Royster asserts that trial counsel lacked a trial strategy, which was evidenced when counsel attempted to impeach eyewitnesses' credibility despite Royster never denying that he was at the crime scene (or that he had killed the victims) and being willing to testify on his own behalf. *See id.* at ECF pp. 19, 22. Sixth, Royster claims that trial counsel failed to present any defense witnesses or tell him why he was not doing so. *See id.* at ECF pp. 19, 22. Finally, Royster contends that trial counsel failed to properly challenge the Commonwealth's case or pursue a diminished capacity defense.[5] *See id.* at ECF pp. 19, 22.

Royster claims that trial counsel was deficient in the aforementioned respects because trial counsel was suffering from mental illness. *See id.* at ECF p. 21. In this regard, Royster learned that the Pennsylvania Supreme Court issued an opinion and order disciplining his trial counsel. *See id.* In the opinion, the Court indicated that trial counsel had suffered from an undiagnosed mental illness for 15 years, which had caused him in some instances to fail to communicate with clients and diligently pursue cases.[6] *See id.* Royster points out that trial counsel was eventually diagnosed with Attention Deficit Hyperactivity Disorder, Dysthmic Disorder, and Depressive Disorder, which, when left untreated, cause distractability, disorganization, and forgetfulness. *See id.*

In addition to his allegations about trial counsel's deficient performance during the guilt phase of his criminal trial, Royster includes other allegations potentially relevant to his claims in the habeas petition. For instance, Royster asserts that he remained in solitary confinement from

---

[5] Royster avers that he had separate counsel for the penalty phase of his case. *See* Pet. at ECF p. 19. During the penalty phase, Royster asserts that counsel "presented evidence of [his] mental health illness history, abusive childhood and called [his] mother and a psychiatrist for [his] defense of mitigation against the death penalty." *Id.* Based on the jury's decision not to impose the death penalty, Royster believes that this evidence would have assisted with a diminished capacity defense in the guilty phase of the trial. *See id.*

[6] This opinion is publicly available on the website for The Disciplinary Board of the Supreme Court of Pennsylvania.

2001 through 2013.[7] *See id.* at ECF p. 20. During this time, he claims that his direct appellate counsel and counsel appointed to prosecute his first PCRA petition never consulted with him about the claims he sought to raise and never investigated certain meritorious claims (which Royster does not identify). *See id.*; *see also id.* at ECF p. 21 ("New Court appointed attorney for PCRA procedures [sic] did not consult with me regarding trial counsels [sic] ineffectiveness, did not file any nonfrivolous claims during the PCRA procedures [sic] and failed to provide me effective representation during the time he was appointed to ensure my due process rights were protected."). He also claims that counsel who represented him on his appeal from the dismissal of his first PCRA petition failed to provide him with a copy of his appellate brief or the Superior Court's opinion affirming the dismissal. *See id.* Instead, he alleges that he only received copies of the brief and the Superior Court's opinion "until years after the decision and that only happened by chance when [he] stumbled on it."[8] *Id.* Royster lastly asserts that for an unidentified period of time he did not receive treatment for his mental health illness. *See id.* at ECF p. 20.

Regarding the timeliness of his petition, Royster argues that his petition is timely because of "newly discovered evidence of trial counsels [sic] mental health illness that presented Cronic abandonment of counsel in accordance to [sic] U.S. v. Cronic, Strikland [sic] v. Washington and Martinez v. Ryan." *Id.* at ECF p. 16. He further asserts that "PCRA court appointed counsel's failure to investigate the facts of [his] case choosing instead to file meritless claims even after being ordered to consult with [him] is unreasonable[, and t]he fact that [he] never received an

---

[7] It is unclear from the petition when Royster was moved from solitary confinement to general population. At one point in the petition, Royster claims that this occurred in 2013. *See* Pet. at ECF p. 20 ("Within a few month [sic] of my convicting [sic], sentence and commitment to the DOC[,] I was placed in solitary confinement where I stayed from 2001 until 2013."). Later in the petition, Royster avers that he was released from solitary confinement in October 2014. *See id.* at ECF p. 21.

[8] Although Royster claimed that he "stumbled" upon copies of these documents, it appears that after unsuccessfully seeking copies of them from his "last attorney of record," he was able to obtain copies of them from the Superior Court. *See* Pet. at ECF p. 20.

evidentiary hearing and appeal rights were lost is proof of prejudice." *Id.* at ECF p. 22 (citing *Martinez v. Ryan*, 466 U.S. 1 (2012)).

Judge Jones referred this matter to United States Magistrate Judge Timothy R. Rice for the preparation of a report and recommendation on May 11, 2022. *See* Doc. No. 7. On May 20, 2020, Judge Rice issued a report and recommendation in which he recommended that the court deny the habeas petition because it was not filed within the one-year limitation period applicable to a petition for a writ of habeas corpus under 28 U.S.C. § 2244(d)(1).[9] *See generally* Doc. No. 8.

In reaching this recommendation, Judge Rice first addressed when the one-year limitations period accrued. *See* R. & R. at 2, Doc. No. 8. Judge Rice pointed out that ordinarily, the one-year period runs from when the petitioner's judgment of sentence becomes final "by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* (quoting 28 U.S.C. § 2244(d)(1)(A)). He noted that Royster's judgment of sentence became final on April 3, 2006, which was 30 days after the Superior Court affirmed the dismissal of Royster's first PCRA petition. *See id.* Since Royster did not file his habeas petition until May 2019, Judge Rice explained that the petition is untimely unless an alternative start date in section 2244(d)(1) applied. *See id.*

Judge Rice then analyzed whether the limitations period should begin to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," as this appeared to be Royster's argument in support of the timeliness of his petition. 28 U.S.C. § 2244(d)(1)(D); *see* R. & R. at 2–4; Pet. at ECF p. 16 (addressing timeliness of petition). Royster had essentially claimed that the limitations period should begin to run in December 2014, when he discovered the information about his trial

---

[9] Judge Rice explained that he was "able to determine that Royster's habeas petition is untimely based on his petition, the exhibits, and the published state court dockets, papers, and opinions." R. & R. at 1 n.1 (citing Rule 4, 28 U.S.C. foll. § 2254); *see* Rule 4, 28 U.S.C. foll. § 2254 ("If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition.").

counsel's mental health issues via counsel's attorney disciplinary proceedings. *See* R. & R. at 3 (citing Pet. at ECF p. 16). Judge Rice pointed out that Royster also contended that his trial counsel's conduct should be evaluated under *United States v. Cronic*, 466 U.S. 648 (1984) due to counsel's abandonment rather than for ineffectiveness under *Strickland v. Washington*, 466 U.S. 668 (1984). *See id.*

Judge Rice rejected Royster's argument that *Cronic* should apply in this case because neither attorney disciplinary action nor a diagnosed medical condition converts *Strickland* claims into *Cronic* claims. *See id.* at 4 (citations omitted). He also explained that "the disciplinary action against Royster's trial counsel is not 'new evidence' that can justify an alternative start-date because the facts he alleged support his claim were available to him within the limitations period." *Id.* (citation omitted). As such, he concluded that "[t]he federal limitations period . . . began accruing when Royster's judgment became final in 2006." *Id.* (citation omitted).

Using the judgment-of-sentence-as-final start date under section 2244(d)(1)(A), Judge Rice then evaluated whether statutory tolling, equitable tolling, or the fundamental-miscarriage-of-justice exception could save the petition from being denied as untimely. *See id.* at 5–8. Regarding statutory tolling, Judge Rice determined that Royster's "untimely federal petition c[ould not] be cured by statutory tolling" under section 2244(d)(2) insofar as he did not file his second PCRA petition until more than nine years after his judgment of sentence became final. *Id.* at 5. As for equitable tolling, Judge Rice concluded that Royster was not entitled to equitable tolling based on his purportedly untreated mental illness because (1) it is not a *per se* justification for equitable tolling, (2) Royster had not provided any evidence to show he suffered from mental incompetency, and (3) Royster's participation in numerous other legal matters during the federal limitations period "negate[d] the notion that his mental impairment or solitary confinement constituted

'extraordinary circumstances' . . . preclud[ing] him from timely filing his federal habeas petition." *Id.* at 5–6 (identifying Royster's other civil actions). Concerning the fundamental-miscarriage-of-justice exception, Judge Rice determined that Royster did not qualify for this exception because he did not present any new evidence showing that it was more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. *See id.* at 7–8 (citations omitted). In this regard, Judge Rice noted that even if Royster could have presented a diminished capacity defense, it would have only established legal and not factual innocence, and he would have had to show factual innocence to qualify for this exception. *See id.* at 7–8. As such, since no tolling doctrines or the fundamental-miscarriage-of-justice exception applied, Judge Rice recommended that the undersigned deny the habeas petition. *See id.* at 9.

After Judge Jones granted him multiple extensions to file objections to the report and recommendation, Royster timely filed objections to Judge Rice's report and recommendation on June 11, 2021.[10] *See* Doc. Nos. 9, 10, 12, 13, 15, 16. The respondents did not file a response to the objections; as such, they became ripe on June 26, 2021. On December 2, 2022, Chief Judge Sanchez reassigned this matter from Judge Jones's calendar to the undersigned's calendar. This court will now address the ripe objections to the report and recommendation.

## II.     DISCUSSION

### A.     <u>Standard of Review</u>

Upon timely and specific objection by a party to a portion of a report and recommendation issued by a magistrate judge, the district court "is obliged to engage in *de novo* review of only those issues raised on objection." *Morgan v. Astrue*, Civ. A. No. 08-2133, 2009 WL 3541001, at

---

[10] As part of Judge Jones' last extension, he allowed Royster to file objections by June 7, 2021. *See* Doc. No. 15. It is unclear from the objections when Royster provided them to prison officials for mailing to the clerk of court as he dated the objections for June 2, 2021, *see* Doc. No. 16 at ECF pp. 7, 8, and it appears that the envelope containing the objections is postmarked for June 8, 2021. *See id.* at ECF p. 9. The court gives Royster the benefit of the earlier date.

*2 (E.D. Pa. Oct. 30, 2009) (citing 28 U.S.C. § 636(b)(1) and *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989)). In conducting this review of the report, the court may "accept, reject, or modify, in whole or in part," the report's findings and recommendations. *Id.* (quoting 28 U.S.C. § 636(b)(1)).

### B.     Summary of Royster's Objections

Royster's objections are unfortunately somewhat difficult to interpret due to their narrative format and lack of a specified connection to the report and recommendation. Nevertheless, it appears that his first objection to the report and recommendation is to Judge Rice's determination that the section 2244(d)(1)(A) start date, and not the section 2244(d)(1)(D) start date, applied in this case. *See* Objs. to R. & R. ("Objs.") at ECF p. 3 ("Petitioner argues alternate start date is appropriate.").[11] Royster argues that he has "several reasons" why the latter start date is appropriate in this case. *See id.* First, he argues that the court should use the alternate start date because of his mental health issues. *See id.* He claims that he has been involuntarily hospitalized on several occasions prior to and during his incarceration; he has a mental health diagnosis which he cannot identify; and he takes several medications due to this diagnosis. *See id.* Second, Royster points to the time he spent in solitary confinement from 2002 until 2014, where he had limited access to the law library. *See id.* Royster acknowledges that he was involved in other federal legal matters during this period, but argues that they are irrelevant because they were civil cases, he had counsel appointed for him in some of them, he had some prisoner groups assisting him in others, and although there are self-help books for civil cases, there are no such books in the prison for criminal cases. *See id.* Finally, Royster indicates that he did not receive notification from his PCRA counsel or the Superior Court that his judgment of sentence had become final. *See id.*

---

[11] For some reason, Royster's objections include copies of each page as well. *Compare* Doc. No. 16 at ECF p. 1, *with id.* at ECF p. 2.

In addition to these arguments, Royster complains about the disciplinary proceedings involving his trial counsel, the proceedings before the PCRA court on his second PCRA petition, and the disposition of his appeal from the dismissal of his second PCRA petition. *See id.* at ECF p. 5. Concerning the disciplinary proceedings, Royster appears to claim that his trial counsel was permitted to "cheery [sic] pick" which criminal matters were brought up during the proceedings to show that no clients were actually harmed due his professional misconduct. *Id.* Royster complains that there was "no investigation even in a cursory manner of the criminal dockets of [trial counsel's] other clients . . . to determine who if anyone suffered irreparable harm as a result of his psychiatric disorders." *Id.* As for the PCRA proceedings, Royster asserts that the PCRA court erred in not holding an evidentiary hearing relating to his newly discovered facts as he believes that a hearing was mandated by Pennsylvania law and denying him a hearing effectively prevented him from proving the exception to the PCRA timeliness bar. *See id.* He further asserts that the Superior Court made an unreasonable determination of the facts when it stated that all of trial counsel's clients had been convicted of homicide and none of them suffered prejudice because they were ultimately permitted to pursue their appellate and PCRA claims. *See id.*

For the final portion of his objections, Royster appears to object to Judge Rice's determination that *Strickland*, and not *Cronic*, would apply to Royster's ineffective assistance of counsel claims. *See id.* Royster argues that

> [b]ecause it is undisputed that trial counsel's disorganization and lack of focus was/is a result of his undetected ADHD and depression, and without proper medical treatment for his underlying psychiatric disorders, he was basically incapable of changing his behavior as well as the fact that he suffered from these psychiatric disorders as far back as 1998 without proper medical treatment allows [this ineffectiveness] claim to fall within the narrow scope of Chronic [sic].

*Id.* Royster alternatively contends that should this court apply *Strickland* to his claims, this court should conclude that the PCRA court and Superior Court erred by declining to grant him an

evidentiary hearing to allow him to develop his claim or provide him with the opportunity to amend his PCRA to satisfy any defects. *See id.* Similarly, he argues that this court should not deny his habeas petition without giving him an opportunity to amend it to correct any deficiencies. *See id.*

### C.   Analysis

As indicated above, while it is difficult for the court to identify which portions of the report and recommendation Royster is objecting to via the arguments he includes in his objections, it is apparent that he is objecting to Judge Rice's determination that the earlier start date of the limitations period applies in this case. It also appears that he objects to Judge Rice determining that equitable tolling did not apply. The court will first address the objection relating to the accrual date of the AEDPA limitations period, and then will address the objection to Judge Rice's recommendation that the court should not apply equitable tolling.

### 1.   Objection to the Determination that the Accrual Date in Section 2244(d)(1)(A) Applies Rather Than the Accrual Date in Section 2244(d)(1)(D)

Regarding the limitations period for filing habeas petitions under section 2254,

[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; [or]

. . .

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A), (D). As indicated above, Judge Rice determined that Royster did not establish that he was entitled to start the one-year period as set forth in section 2244(d)(1)(D) and the start date in section 2244(d)(1)(A) applied. The court agrees with Judge Rice.

Concerning the limitations period under section 2244(d)(1)(D), this section "provides a petitioner with a later accrual date than section 2244(d)(1)(A) only if vital facts could not have been known." *Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004), *cert. denied*, 544 U.S. 1037 (2005). Thus, a petitioner seeking to invoke section 2244(d)(1)(D)

> must file a habeas petition within one year of learning the vital facts necessary to make out his or her claim. *See McAleese v. Brennan*, 483 F.3d 206, 214 (3d Cir.2007). To "delay the triggering of the running of the limitations period until all evidence in support of a petition is secured," would create "a result which surely would run contrary to the intent of Congress through its enactment of the [Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")] to promote the finality of convictions." *Id.* at 215. The requisite "factual predicate" of a claim is the set of "vital facts" underlying the claim. *Id.* at 214.

*Champney v. Sec., Pa. Dep't of Corr.*, 469 F. App'x 113, 116 (3d Cir. 2012). In addition, "[e]vidence becomes 'known' on 'the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of reasonable diligence." *Sistrunk v. Rozum*, 674 F.3d 181, 188–89 (3d Cir. 2012) (quoting 28 U.S.C. § 2244(d)(1)(D)).

As for the requirement of exercising due diligence referenced in section 2244(d)(1)(D), "AEDPA does not impose a one-size-fits-all requirement. Rather, what due diligence requires depends on the circumstances of each petitioner: who he is, what facts he knows, what claim he seeks to bring, and what he can reasonably expect in view of his circumstances and the nature of that particular claim." *Bracey v. Superintendent Rockview SCI*, 986 F.3d 274, 285 (3d Cir. 2021). Moreover,

> "to satisfy § 2244(d)(1)(D)'s 'due diligence' standard, a prisoner must exercise 'reasonable diligence in the circumstances." *Wilson v. Beard*, 426 F.3d 653, 660 (3d Cir. 2005) (quoting *Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004)). That inquiry "is context-specific," and "[t]he fact that we require a petitioner in one situation to undertake certain actions does not necessitate that we impose the same burden on all petitioners." *Id.* at 661.

> [There are also] important markers guiding courts in assessing what due diligence requires. "It is not enough," . . . "that [a petitioner] could have learned

about [the factual basis for his claim] by happenstance" or "that [he] could have discovered [it] fortuitously." *Id.* at 660. Nor must a petitioner "continuously monitor[ ] [public sources] for [years] ... on the unlikely chance that he might learn something which would be useful to his case." *Id.* at 661 (internal quotation marks and citation omitted). Rather, § 2244(d)(1)(D) requires that we focus on the "reasonabl[e] expect[ations]" of someone "in [the petitioner's] position," because a petitioner will have an obligation to investigate only once he has a "reasonable basis ... to expect that [investigation] would uncover ... relevant information." *Id.* In short, unless "the petitioner should be expected to take actions which would lead him to the information," *id.* at 662, his decision not to investigate "[i]s not a failure to exercise due diligence," *id.* at 661.

*Bracey*, 986 F.3d at 286 (all alterations except for first and second alterations to second paragraph in original) (footnote omitted).

In applying the above standard to this case, Royster's discovery of the disciplinary proceedings against his trial counsel and the information contained in the opinion and order relating to the discipline is "new" information. Also, it appears that Royster could not have discovered information about trial counsel's mental health issues or the results of his disciplinary proceedings earlier than he did by exercising due diligence. Nevertheless, this "new" information is not the factual predicate of the ineffective assistance of counsel claims Royster is attempting to assert in his habeas petition. In other words, neither trial counsel's mental health diagnosis nor the information about this diagnosis referenced in the opinion resolving trial counsel's disciplinary proceedings are the "vital facts" forming the basis of Royster's ineffective assistance of counsel claims against his trial counsel. Instead, these facts are only an ancillary part of these ineffective assistance claims.

For instance, while it is somewhat unclear if this is one of Royster's ineffective assistance of counsel claims,[12] Royster generally asserts that trial counsel did not sufficiently or meaningfully

---

[12] The court recognizes that

[c]laims that counsel failed to communicate with a client may demonstrate deficient performance on the part of the attorney; however, there must still be allegations of prejudice to [obtain habeas

communicate with him prior to trial. *See* Pet. at ECF p. 19 (stating that he and trial counsel "had

limited direct contact" and he "called [trial counsel] several times in the same week and frequently

was unable to speak to him"); *id.* at ECF p. 21 (representing that trial counsel "visited [him]

approximately twice" despite him having sent trial counsel "numerous letters" and having

"attempted to contact him by phone almost every business day"). The "vital facts" relating to this

claim are (1) those facts pertaining to the amount, length, and substance of communications

between Royster and trial counsel prior to trial; (2) Royster's unsuccessful attempts to

communicate with trial counsel; and (3) facts relating to any possible prejudice Royster suffered

due to the lack of communication. Royster would have known these vital facts by the time of trial.

In other words, he would have known how many times he unsuccessfully attempted to

communicate with trial counsel, the number of conversations he had with trial counsel during the

course of the case, the length of those conversations, or any written correspondence exchanged

between Royster and trial counsel. Evidence relating to trial counsel having an undiagnosed mental

illness at this time might explain why trial counsel did not sufficiently communicate with Royster,

but would be irrelevant to whether trial counsel's performance was deficient or, if counsel's

performance was deficient, whether Royster suffered prejudice due to the deficient performance.

The remainder of Royster's claims regarding trial counsel's alleged ineffectiveness all

involve "vital facts" that Royster would have known before or during the trial:

Royster asserts that trial counsel was ineffective for not investigating Royster's mental

health issues, history of drug abuse, or abusive childhood or presenting a diminished capacity

---

relief.] Without more, the fact that a petitioner is dissatisfied with the quality and sufficiency of
communication is of no consequence. Furthermore, the length of time or manner of communication
counsel has with his or her client does not automatically establish ineffective assistance.

*Medina-Marquez v. United States*, No. PE:09-CR-415(1)-RAJ, 2013 WL 12230792, at *7 (W.D. Tex. May 31, 2013)
(internal citations omitted).

defense at trial. *See id.* at ECF pp. 19, 22. The "vital facts" underlying this claim are trial counsel's failure to investigate these issues and his failure to present a diminished capacity defense at trial.

Royster asserts that trial counsel was forgetful, unprepared, and disorganized during the trial. *See id.* at ECF pp. 19, 22. The "vital facts" underlying this claim are facts showing that counsel was forgetful, unprepared, and disorganized at trial.

Royster claims that trial counsel was ineffective for not making an opening statement to the jury. *See id.* at ECF p. 19. The "vital fact" underlying this claim is that trial counsel did not make an opening statement to the jury.

Royster contends that trial counsel was ineffective for not having a trial strategy. *See id.* The "vital fact" underlying this claim is that trial counsel lacked a trial strategy.

Royster asserts that trial counsel was ineffective for deciding to impeach and challenge the credibility of witnesses who had identified Royster,[13] because Royster was not denying having committed the killings. *See id.*; *see also id.* at ECF p. 22 (acknowledging that he "admitted criminal liability but contested the degree of guilt"). The "vital fact" underlying this claim is trial counsel's impeachment of witnesses who identified Royster.

Royster argues that trial counsel was ineffective for failing to investigate and present any witnesses for the defense. *See id.* at ECF pp. 19, 22. The "vital facts" underlying this claim are counsel's lack of an investigation and failure to present any witnesses as part of the defense.

Finally, Royster asserts that trial counsel was ineffective for failing to "pursue any meaningful adversarial testing of the prosecution's case." *Id.* at ECF pp. 19, 22. The "vital fact" underlying this claim is trial counsel's failure to meaningfully contest the prosecution's case.

---

[13] It is unclear from the petition whether these witnesses identified Royster at the scene of the crime or as the perpetrator of the crime, or both. Royster has not identified the names of these witnesses or the substance of their testimony.

As the court's identification of the "vital facts" underlying these claims demonstrates, Royster did not need to know about trial counsel's mental health issues to raise any of these claims in a prior habeas petition or in a PCRA petition. He had all the factual information he needed by the time his trial concluded. In addition, trial counsel's then-undiagnosed mental health issues would not have made it more or less likely that any court would find trial counsel ineffective in Royster's case. For example, presume Royster had proceeded to an evidentiary hearing on his claim that trial counsel was ineffective for impeaching the Commonwealth's witnesses who identified Royster, despite Royster admitting to killing the victims. During the hearing, or through the existing record (such as trial transcripts) admitted during the hearing, also presume that Royster shows that trial counsel tried to impeach the Commonwealth's witnesses who identified Royster. Under *Strickland*, to show that this conduct was ineffective, Royster would have to show that trial counsel's impeachment was objectively unreasonable. *See Nguyen v. Att'y Gen. of N.J.*, 832 F.3d 455, 464 (3d Cir. 2016) (explaining that to show counsel was ineffective, petitioner must "first demonstrate[] that his counsel's performance fell below an objective standard of reasonableness" (citing *Strickland*, 466 U.S. at 688)). Royster's introduction of the disciplinary opinion or similar evidence showing that trial counsel had an undisclosed mental health issue at the time of trial would not have made it more or less likely that impeaching those witnesses was unreasonable. Also, even if Royster, Royster's counsel, government counsel, or the court was questioning trial counsel about the decision to impeach those witnesses, trial counsel's explanation as to the decision would not be his mental health diagnosis. In this regard, even if the mental health issue caused trial counsel to be unprepared, disorganized, or lack a trial strategy, counsel's theoretical answer to a question about the decision to impeach would be due to lack of preparation,

disorganization, or a lack of trial strategy. And Royster would have known at trial if trial counsel was unprepared, disorganized, or lacked a trial strategy prior to or during the trial.

At bottom, trial counsel's then-undiagnosed mental health issues are not a "vital fact" underlying Royster's claims of ineffectiveness in this case. Royster "has confused the facts that make up his claims with evidence that might support his claims." *McAleese*, 483 F.3d at 214 (citing *Johnson v. McBride*, 381 F.3d 587, 589 (7th Cir. 2004)). Royster had the factual predicates for his ineffectiveness claims by no later than the conclusion of his trial. As such, the court agrees with Judge Rice that Royster has not shown that he is entitled to the alternative start date provided by section 2244(d)(1)(D), and will overrule Royster's objection to this determination.

The court also notes that even if the court had sustained this objection and used the alternative start date, the statute of limitations would still bar the instant petition. In this regard, Royster filed the instant petition in May 2019, which was not within one year after he discovered the evidence of trial counsel's mental health issues in December 2014.[14] Therefore, unless statutory tolling, equitable tolling, or the fundamental-miscarriage-of-justice exception applies, the instant petition is untimely even using the section 2244(d)(1)(D) start date.

Concerning statutory tolling, the AEDPA contains a tolling provision, which provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). A "properly filed application" for state post-conviction collateral review is "one submitted according to the state's procedural

---

[14] The court recognizes that Royster does not identify the date he learned about the disciplinary proceedings and trial counsel's mental health issues in his habeas petition. This date was mentioned in the Superior Court's opinion affirming the dismissal of the second PCRA petition. *See Royster*, 2017 WL 4150580, at *1. Nonetheless, even without this date referenced in that opinion, Royster clearly learned about this information prior to filing his second PCRA petition in January 2015, and filed the instant habeas petition well beyond the one-year period provided in section 2244(d)(1)(D).

requirements, such as the rules governing the time and place of filing." *Lovasz v. Vaughn*, 134 F.3d 146, 148 (3d Cir. 1998). "State prisoners therefore must file their state claims promptly and properly under state law in order to preserve their right to litigate constitutional claims that are more than one year old in federal court." *Fahy v. Horn*, 240 F.3d 239, 243 (3d Cir. 2001). If the state court dismisses a late-filed application for post-conviction collateral review because it is time-barred, the application does not constitute a "properly filed application" for AEDPA tolling purposes. *See Merrit v. Blaine*, 326 F.3d 157, 166 (3d Cir. 2003) ("[W]e hold that we are bound by the state court's finding that Merritt's second PCRA petition was untimely. Therefore, we affirm the District Court's order holding that Merritt's second PCRA petition was not 'properly filed.'"); *see also Graham v. Superintendent Somerset SCI*, No. 17-3660, 2018 WL 2735398, at *1 (3d Cir. Apr. 17, 2018) ("Although Appellant filed a second PCRA petition on May 18, 2015, the state court determined that the petition was untimely; therefore, the second PCRA petition did not toll the limitations period under § 2244(d)(2)." (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005))).

Here, Royster would not be entitled to statutory tolling. The PCRA court dismissed Royster's second PCRA petition as untimely, and the Superior Court affirmed this decision. *See Royster*, 2017 WL 4150580, at *4 ("For the foregoing reasons, Appellant's second PCRA petition is untimely, and he has failed to plead and prove an exception to the statutory time-bar. The PCRA court properly dismissed it, and we discern no other basis on which to disturb the PCRA court's dismissal of Appellant's petition as untimely."). Since the state courts dismissed the second PCRA petition because it was untimely, this court is bound by those determinations. Therefore, the second PCRA petition was not a "properly filed application" that tolls the limitations period under section 2244(d)(2).

As for equitable tolling, the AEDPA's one-year limitations period is "subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace*, 544 U.S. at 418 (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). As to the first element, the "diligence required for equitable tolling purposes is reasonable diligence, not maximum, extreme, or exceptional diligence." *Ross v. Varano*, 712 F.3d 784, 799 (3d Cir. 2013) (citing *Holland*, 560 U.S. at 653). A reasonable diligence determination is "a subjective test: it must be considered in light of the particular circumstances of the case." *Id.* (citations omitted).

In evaluating the second element, the habeas petitioner must "in some extraordinary way [have] been prevented from asserting his . . . rights." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994) (citations omitted), *overruled in part on other grounds by Rotkiske v. Klemm*, 890 F.3d 422, 428 (3d Cir. 2018) (en banc). Equitable tolling may be justified when "(1) the [respondent] has actively misled the [petitioner], (2) the [petitioner] has in some extraordinary way been prevented from asserting his or her rights, (3) the [petitioner] has timely asserted rights, but has mistakenly done so in the wrong forum." *Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999) (citation and internal quotation marks omitted).

This court recognizes that courts should sparingly apply the doctrine of equitable tolling. *See LaCava v. Kyler*, 398 F.3d 271, 275 (3d Cir. 2005) ("We have cautioned ... that courts should be sparing in their use of this doctrine."). Equitable tolling applies

> "only in the rare situation where [it] is demanded by sound legal principles as well as the interests of justice." *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998) (quotation marks and citation omitted). Equitable tolling is appropriate when "the principles of equity would make the rigid application of a limitation period unfair," *Miller*[ *v. N.J. St. Dep't of Corr.*, 145 F.3d 616, 618 (3d Cir. 1998)] (quotation marks and alterations omitted), such as when a state prisoner faces

> extraordinary circumstances that prevent him from filing a timely habeas petition and the prisoner has exercised reasonable diligence in attempting to investigate and bring his claims. *Fahy v. Horn*, 240 F.3d 239, 244-45 (3d Cir. 2001). Mere excusable neglect is not sufficient. *Miller*, 145 F.3d at 618-19; *see also Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999).

*LaCava*, 398 F.3d at 275–76 (first alteration in original).

In this case, Royster is not entitled to equitable tolling. Even presuming that Royster has been diligently pursuing his rights, he has not shown that any extraordinary circumstances stood in his way of timely filing this habeas petition. Royster does not state either in his petition or in his objections how he was prevented from filing a timely habeas petition. None of the conduct which he discusses prior to him learning about trial counsel's mental health issues and disciplinary proceedings in December 2014, such as issues with PCRA counsel or PCRA counsel, or the delay in his discovery of the denial of his first PCRA petition, are relevant to what occurred after December 2014. The only possible ground that Royster asserted that could possibly apply to this period is his own mental health issues, and that ground would not warrant equitable tolling in this case.

As Judge Rice noted in the portion of his report addressing whether Royster's mental health issues could warrant equitable tolling relative to the one-year period running under section 2244(d)(1)(A),

> even "[m]ental incompetence is not a per se cause for equitable tolling." *Champney v. Sec'y of Pa. Dept. of Corr.*, 469 F. App'x 113, 117 (3d Cir. 2012). For a petitioner's mental impairment to warrant tolling, "the alleged mental incompetence must somehow have affected the petitioner's ability to file" a timely petition. *Nara v. Frank*, 264 F.3d 310, 320 (3d Cir. 2001); *see also Lawrence v. Florida*, 549 U.S. 327, 337 (2007) (petitioner needs to make a factual showing of mental incapacity to obtain tolling). To determine whether a petitioner's mental impairments support equitable tolling, courts consider the following factors:
>
> > (1) whether the petitioner was adjudicated incompetent and, if so, when did the adjudication occur in relation to the habeas statutory period; (2) whether the petitioner was institutionalized for his

> mental impairment; (3) whether the petitioner handled . . . other
> legal matters . . . during the federal habeas limitations period; and
> (4) whether the petitioner supported his allegations of impairment
> with extrinsic evidence such as evaluations and/or medications.

*Champney*, 469 F. App'x. at 118 (internal alterations and citations omitted).

R. & R. at 5–6.

When considering the aforementioned factors, Royster is not entitled to equitable tolling due to any mental health issues. Concerning the first factor, although Royster has provided more information about his mental health issues in his objections to the report and recommendation, *see* Objs. at ECF p. 3, he does not allege or provide any evidence to show that he was previously adjudicated incompetent. Regarding the second factor, Royster does claim that he was "involuntarily hospitalized on several occasions prior to and during his incarceration," but does not provide any proof of his hospitalizations despite having had more than a year to file objections to the report and recommendation. As for the third factor, while Royster seemingly did not participate or handle numerous lawsuits during the section 2244(d)(1)(D) limitations period, the court cannot ignore that during this period Royster filed his second PCRA petition *pro se*, filed opposition to counsel's *Turner/Finley* letter, and litigated his appeal from the dismissal of that second petition, which included the filing of an ultimately unsuccessful petition for allowance of appeal with the Pennsylvania Supreme Court. *See* CCP Docket; Pa. Super. Docket; *Royster*, 2017 WL 4150580, at *1–3. Regarding the final factor, as the court already noted, despite having more than a year to file his objections, Royster has not supported his allegations of impairment with extrinsic evidence of any evaluations or medications. In total, Royster's purported mental impairments do not support equitable tolling.

Since Royster does not appear to assert any other ground that would support equitable tolling during the section 2244(d)(1)(D) limitations period,[15] the only way that he can save the untimeliness of his petition is if he can meet the fundamental-miscarriage-of-justice exception. "To invoke [this] exception to AEDPA's statute of limitations, . . . a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in . . . light of the new evidence.'" *McQuiggin v. Perkins*, 569 U.S. 383, 398 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). In essence, this means that the petitioner "must demonstrate that he is actually innocent of the crime . . . by presenting new evidence of innocence." *Cristin v. Brennan*, 281 F.3d 404, 412 (3d Cir. 2002). Royster has failed to meet this standard.

As Judge Rice noted in his report, Royster had failed "to present any new evidence to show it is 'more likely than not that no reasonable juror would have found the [him] guilty beyond a reasonable doubt.'" R. & R. at 7 (quoting *Schlup*, 513 U.S. at 324, 327). Judge Rice properly

---

[15] Although Royster does not assert this as an argument in support of equitable tolling, the court notes that his having filed and litigated the second PCRA petition would not support equitable tolling. *See Dennis v. Ransom*, Civ. A. No. 21-4725, 2022 WL 789019, at *4 (E.D. Pa. Feb. 25, 2022) (concluding habeas petitioner did not show entitlement to equitable tolling when petitioner waited "more than two and a half years after the expiration of the habeas limitations period" to file a habeas petition, "rather than filing a timely petition and seeking to stay it pending any state court appeal"), *report and recommendation adopted by* 2022 WL 785224 (E.D. Pa. Mar. 15, 2022); *Lawton v. Brittain*, No. 1:21-CV-175, 2022 WL 5250277, at *3 (M.D. Pa. Oct. 6, 2022) (concluding that habeas petitioner failed to show entitlement to equitable tolling when he litigated untimely PCRA petition during part of limitations period, and pointed out that petitioner failed to show why he did not file a protective habeas petition to preserve the AEDPA statute of limitations); *ReDavid v. Sauers*, Civ. A. No. 10-5523, 2011 WL 7122968, at *4 n.7, 5 n.9 (E.D. Pa. Apr. 21, 2011) (explaining that petitioner "could have filed a protective habeas petition while his PCRA petition was pending, and requested the federal courts hold his habeas proceedings in abeyance pending resolution of his claims in state court. *See Rhines v. Weber*, 544 U.S. 269, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005). In choosing not to do so, [petitioner] took a gamble by assuming the state courts would find he qualified for an exception to the limitations period there, a gamble [petitioner] ultimately lost[,]" and noting that petitioner "has alleged no basis for tolling the limitations period beyond June 2007 aside from the state courts' dismissal of his PCRA petition, which is not an extraordinary circumstance justifying equitable tolling"), *report and recommendation adopted by* 2012 WL 309630 (E.D. Pa. Feb. 1, 2012); *Malone v. Coleman*, Civ. A. No. 09-2656, 2010 WL 891031, at *1 n.1 (E.D. Pa. Mar. 5, 2010) ("Petitioner's argument that dismissal of his Second PCRA Petition based on the PCRA limitations period constitutes an 'extraordinary circumstance' warranting equitable tolling is patently without merit."); *see also Pace*, 544 U.S. at 416 (explaining that habeas petitioner can avoid "th[e] predicament" of "trying in good faith to exhaust state remedies . . . only to find out at the end that [the state petition] was never 'properly filed'. . . by filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted" (citation omitted)); *Darden v. Sobina*, 477 F. App'x 912, 918 (3d Cir. 2012) (concluding petitioner was not entitled to equitable tolling despite petitioner's argument that "he was in a 'procedural conundrum' not of his making because he was required to exhaust his state law remedies before filing in federal court").

explained that Royster's argument about a diminished capacity defense would not satisfy this standard because such a successful defense "establishes only legal, not factual innocence," *id.* (citing *Sweger v. Chesney*, 294 F.3d 506, 523 (3d Cir. 2002)), and "actual innocence means factual innocence, not mere legal insufficiency." *Id.* (quoting *Bousely v. United States*, 523 U.S. 614, 623 (1998)). Accordingly, Royster has not shown that he is entitled to the fundamental miscarriage of justice exception to the section 2244(d)(1)(D) limitation period.

### 2.   Objection to the Determination that the Petitioner was not Entitled to Equitable Tolling for Section 2244(d)(1)(A) Limitations Period

While this objection is also unclear, it appears that Royster objects to Judge Rice's determination that he is not entitled to equitable tolling due to his mental health issues and possibly his lengthy period of solitary confinement. The court has already discussed the showing that Royster would have to make to show that his mental health issues warranted equitable tolling, and the court again agrees with Judge Rice that Royster that those issues do not warrant the application of equitable tolling to the section 2244(d)(1)(A) limitations period.

As Judge Rice explained, Royster's mental illness would not be a *per se* justification for equitable tolling. *See* R. & R. at 5 (citing *Champney*, 469 F. App'x at 117). In addition, Judge Rice properly noted that Royster had not provide any evidence that he suffered from mental incompetency and he had participated in numerous other legal matters during the federal limitations period and even beyond that period. *See id.* at 6 (citations omitted). Royster appears to object to these determinations because he notes in his objections that he had been involuntarily hospitalized on several occasions, was diagnosed with a mental health illness (but could not name it), and was taking several medications for this illness. *See* Objs. at ECF p. 3. He also attempts to downplay his participation in other legal matters because the matters were all civil in nature, he was appointed counsel in some, had assistance from inmate advocacy groups who focus on civil

rights violations, and he was unsuccessful in most of his cases. *See id.* These objections are insufficient for this court to depart from Judge Rice's decision.

The court has essentially already addressed both of these objections in declining to find that equitable tolling applied relative to the section 2244(d)(1)(D) limitations period. Nonetheless, Royster's arguments are unavailing because he does not allege or show that he had ever been determined to be incompetent. Also, to the extent that Rosyter has been involuntarily hospitalized or has an existing mental health illness that has been diagnosed, he has not identified that illness or provided any extrinsic evidence to support his claims despite having a significant period of time to do so. In addition, Royster unsuccessfully attempts to minimize his participation in other legal matters. His arguments about the civil nature of the other litigation, having assistance from counsel or inmate advocacy groups in some instances, and being unsuccessful don't outweigh the pure breadth of his involvement in the other litigation identified by Judge Rice. Those other cases included: *Royster v. Beard, et al.*, Civ. A. No. 05-2063-ARC-EW (M.D. Pa.);[16] *Royster v. Beard, et al.*, Civ. A. No. 06-842-ARC-EW (M.D. Pa.);[17] *Royster, et al. v. Beard, et al.*, Civ. A. No. 07-3540 (E.D. Pa.); *Royster v. Mahlmeister, et al.*, Civ. A. No. 08-616-ARC-EW (M.D. Pa.);[18] *Royster v. Cummings, et al.*, Civ. A. No. 08-1297-DWA-CB (W.D. Pa.);[19] *Royster v. Beard, et al.*, Civ. A. No. 09-1150-LPL (W.D. Pa.);[20] and *Royster v. Corizon, et al.*, Civ. A. No. 13-cv-1449-

---

[16] The docket entries in this case show that Royster, proceeding *pro se*, litigated this case brought under 42 U.S.C. § 1983 from October 11, 2005, through its resolution in August 2012.

[17] In this matter, Royster, proceeding *pro se*, also appealed from the district court's memorandum and order which granted the defendants' motion for summary judgment, so he also litigated this matter before the Third Circuit Court of Appeals. *See Royster v. Beard, et al.*, No. 08-3353 (3d Cir.).

[18] Royster proceeded *pro se* in this matter through its transfer to the United States District Court for the Western District of Pennsylvania. He also filed an appeal to the Third Circuit prior to the case's transfer.

[19] Royster proceeded *pro se* in this matter.

[20] Royster proceeded *pro se* in this matter for approximately five years before counsel, after the district court had referred the case for the appointment of counsel, entered an appearance for him and then represented him until the matter concluded.

ARC (M.D. Pa.).[21] As such, Judge Rice properly concluded that Royster's participation in these cases "negate[s] the notion that his mental impairment or solitary confinement constituted 'extraordinary circumstances' that precluded him from timely filing his federal habeas petition," and the court will overrule Royster's objection to this determination.[22]

### D.      Certificate of Appealability

Since the court is denying Royster's habeas petition, the court must determine whether to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court . . . ."). This court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). With respect to whether to issue a certificate of appealability,

> and the district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. . . . When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

---

[21] Royster proceeded *pro se* in this matter for more than three years, ultimately filing an appeal from the district court's order granting summary judgment. It appears that the Third Circuit dismissed the appeal for failure to prosecute. *See Royster v. Corizon*, No. 16-3787 (3d Cir.).

[22] For sake of completeness, the court notes that Royster also referenced *Martinez v. Ryan*, 566 U.S. 1 (2012) in his habeas petition. *See* Pet. at ECF p. 22. To the extent Royster was somehow arguing that *Martinez* could save the timeliness of the instant petition, he is mistaken. *See, e.g. Mann v. Superintendent Greene SCI*, No. 16-3815, 2016 WL 9978391, at *1 (3d Cir. Jan. 30, 2017) ("*Martinez* has nothing to do with the governing statute of limitations and cannot excuse a failure to file within the limitations period.").

Here, the court finds that reasonable jurists would not find it debatable whether the petition states a valid claim of the denial of a constitutional right or whether the court was correct in determining that the statute of limitations barred the petition. As such, the court declines to issue a certificate of appealability.

## III.    CONCLUSION

For the reasons discussed above, the court agrees with Judge Rice that Royster did not show that he was entitled to the alternative start date in section 2244(d)(1)(D). In addition, even if Royster was entitled to the alternative start date, the instant petition is untimely because he did not file it within a year after discovering the information about his trial counsel's mental health issues, and he has not shown that he is entitled to statutory tolling, equitable tolling, or the fundamental-miscarriage-of-justice exception to the AEDPA time bar. Moreover, to the extent that Royster is objecting to Judge Rice's determination that he is not entitled to equitable tolling pertaining to the section 2244(d)(1)(A) limitations period, the court finds that his objection lacks merit because Judge Rice properly concluded that equitable tolling did not apply. Accordingly, the court will overrule Royster's objections, adopt Judge Rice's report and recommendation as otherwise supplemented by this memorandum opinion, deny Royster's habeas petition, and decline to issue a certificate of appealability.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.